*1167 OPINION.
Phillips:
In 1919 the petitioners acquired a one-half interest in certain real estate, a portion of which was exchanged on January 1, 1920, for certain other real estate and the notes of the purchaser. The tract first acquired was 1927 acres in extent and the acreage varied greatly in value. The evidence shows that by reason of its location, freedom from creeks and gullies, and fertility, the portion sold had a greater value than the remainder. The Commissioner recognized this fact in assigning a value of $181.70 an acre to the land retained and $225 an acre to the land exchanged. All of the evidence sustains the petitioners’ claim that an even greater difference in value existed. Several witnesses were produced who were acquainted with the value of such lands and after considering their testimony, we conclude that the purchase price of the entire tract must be so allocated as to assign $250 an acre to the property transferred.
The value of the property received in exchange is also in dispute. The value fixed by the deed seems to give no accurate index to the actual value, for apparently both parties to the exchange “ inflated ” the value for the purposes of the trade. The property received is *1168 described as gray land, inferior in quality to the black land conveyed and not so well situated. The testimony of several witnesses familiar with values of such lands was adduced by the petitioners and upon the record we reach the conclusion that the value of the land received was $175 per acre.
The property conveyed was held in the name of Brin, in whose name all conveyances and agreements were made. Since the one-half interest of the petitioners arises through Brin, we treat his acts as those of the petitioners for the purposes of our discussion of the case.
The property was acquired subject to two mortgages. Upon the exchange a warranty deed was given, but since the vendors were unable to secure a release of the property from the lien of the mortgages, it was agreed in substance that the purchase-money notes should be deposited in two banks and the proceeds used to discharge these mortgages. We see no substantial difference between such a situation and one where the vendee assumes the mortgage. In either case the vendor may remain liable on his bond, but no additional burden is created on the property.
It is contended that the vendee’s notes were third liens upon the property. While in form this is so, we find when we look at the transaction that any sums paid on the notes served to reduce the prior mortgages. Had there been occasion to foreclose on the property, any amount realized would not only have reduced the first and second mortgages, but would also either have reduced the notes by the same amount or discharged them entirely. The vendors were under obligation to discharge the first and second mortgages and it was because they could not do this that the notes, which would otherwise have been a first lien on the land, were deposited under an agreement designed to assure the discharge of these mortgages.
The mortgages are treated as part of the cost of the land. As soon as the petitioners pay this cost, these notes become first liens. In attempting to value the notes as third liens, the petitioners are in the position of claiming that the first and second mortgages are to be considered at par in determining the cost of the property to them, but that the vendee’s notes, which rank in security with these mortgages because of the terms of the agreement under which they were deposited, have no fair market value. The petitioners overlook the fact that these mortgages represent a part of the cost of the property to them, which they have not yet paid. Let us test the contention of the petitioners by assuming that the entire purchase price had been paid in cash, but became a release from the mortgages could not be obtained, a part of the cash was deposited in a bank under an agreement similar to that under which the notes were deposited. Would it be contended that the cash so deposited had a value only to the *1169 extent that it exceeded the amount of the mortgages and that therefore in computing the sales price, such cash was to be included at such reduced value, while in computing cost the mortgages were i o be included at their face value? If it would be proper to consider that in such circumstances the sales price was the amount of cash, in excess of the mortgages, surely those mortgages could not be considered as a part of the purchase price, payment never having been made. Either they do not enter the equation or they are to be entered on both sides.
It is urged that because of the agreement there was no delivery of the notes to the petitioners. The notes were in fact deposited by consent of the petitioners under an agreement that they be used to pay an indebtedness of the petitioners or held as security for the payment of such indebtedness. The escrow agreement was not one which affected the sale, but ivas collateral to it. The sale was completed; the notes were made subject to the agreement only to assure payment of liens. The maker was in no position to thereafter contend his notes had never been delivered, nor could the petitioners say the purchase price had not been paid. The situation is entirely different from one where no title passes, and the transaction is incomplete, until certain acts are performed. The difference is that which exists between notes which are executed and placed in escrow to be delivered when the terms of the escrow are performed and notes which, when delivered, are placed in escrow under a collateral agreement. Here a sale took place, title passed, and the notes were received by an agent of both parties with their consent. We have no doubt that the sale took place, that the purchase price was received by the petitioners and that the notes are to be considered in determining gain or loss.
The gain should be computed as follows:
Sales price:
Value of 379.5 acres at $175 per acre-$66,412. 50
Notes received in lieu of securing release of property from mort-gages_ 150, 861. 50
217,274.00
Cost, 814.5 acres at $250 an acre-$203, 501. 25
Depreciation as used by Commissioner- 300. 00
- 203,201. 25
Gain_ 14,072.75
One-quarter of such gain constitutes taxable income in 1920 to each of the petitioners.
Decision will he entered on 15 days’ notice, under Rule 50. „
Considered by Marquette and MillikeN.